Parties ready to proceed? May it please the Court, I'm Gregory Evans on behalf of ASARCO, the appellant. Good morning, Your Honors. This case stems from a settlement voluntarily entered into by ASARCO with the United States of America, whereby ASARCO paid $482 million to settle the government's claims to repair and to restore the Coeur d'Alene Valley. As part of the settlement, which is the largest in United States history of its type, which settlement took place in the bankruptcy court, the United States granted to ASARCO and statute provides to ASARCO a right to seek contribution from non-settling parties for the harm that they too caused to the environment, which prevents safe and healthful communities from cleaning up entirely all of the pollution caused over 100 years in the Coeur d'Alene Valley. Now, in order to implement this right of contribution, ASARCO filed a complaint and the district court at the urging and with much misleading by Union Pacific, the railroad. The district court erred and it should be reversed in its decision under Rule 12 to dismiss ASARCO's CERCLA contribution claim under Section 113F3B because ASARCO's complaint is well pleaded and it clearly satisfied the first amendment complaint clearly satisfies Rule 8 pleading standards. Let's talk about the original complaint just for a moment. Yes, Your Honor. You excluded the North Fork area. Why? When ASARCO filed its first complaint, its original complaint, it didn't have all of the facts and information that it had at the time that it sought to amend the complaint. So you had a Rule 11 concern that I better not sue for the North Fork because I don't have an evidentiary basis yet. It wasn't because we didn't have an evidentiary basis. We instead sought to be much more specific in our complaint. But as far as the conduct alleged in the original complaint and the way in which the Union Pacific polluted the environment, that didn't change. It was just as to a geographic inclusion and an area, by the way, that was not the subject of contribution protection granted to the Union Pacific with respect to its other sites specific work that it had performed. And then you filed an amended complaint, what, just a month later? That is correct, Your Honor. And you included the North Fork area. And what happened that made you realize we need to include the North Fork area over that month? During that period of time, investigation was ongoing. And this is a case that is pending before this Court along with many other cases that had been filed by ASARCO against the Union Pacific. And I will tell you as the trial lawyer preparing the case that the Union Pacific has been very aggressive and threatening in the way that they try to discourage complaints. And to be sure that we got this one right because we knew that Union Pacific would file all kinds of motions, including Rule 11 sanctions motions, that we wanted to get it right. And we did get it right. The complaint, the First Amendment complaint, which Judge Lodge threw out at their urging and through their misleading statements with respect to the contents of the settlement agreement that I'd like to get to in a moment. When we filed that complaint, we believed and we continue to believe that the areas that are the subject of that complaint for which contribution is being sought are not covered by any contribution protection afforded to the Union Pacific. And this is relief that ASARCO, after paying $482 million to the United States, is entitled to pursue. That was a right that was bargained for. That is a statutory right that is guaranteed. And that is one because of the error committed in the District Court, the serious and harmful error committed in terms of some of the factual assumptions made by the lower court. All right, now. That's a right that is being interfered with. All right. Now, my understanding is that Judge Lodge ruled that under Rule 15, you, ASARCO, is entitled to take advantage of the relation back doctrine, right? That is correct, Your Honor. With respect to that amendment, including the North Fork. That is correct. Now, what? I don't know. To me, this is an unusual relation back case, closed case. Now, what are the principles that govern whether or not the relation back doctrine was properly invoked? Under Federal Rule of Civil Procedure 15C1B, Your Honor, the court would consider whether the amended complaint asserts a claim that arose out of the conduct, and in this case, the releases caused by Union Pacific through their construction of the rail lines throughout the Coeur d'Alene Valley that contain mining waste that are leaching lead and cadmium and other harmful metals that are affecting human health and the environment. It's one Superfund site, isn't it? It is one Superfund site, but it's the largest in the country. And so they will consider, Your Honor, Judge Tashima, to address your question, whether the claim arose out of the conduct or transaction originally set back in the complaint that ASARCO sought to relate back to. And in the original pleading, it does. It's the same conduct that's asserted. And the judge got it right. I'm sorry. Did the Union Pacific Railroad, I mean, receive fair notice? I mean, that's also a component with respect to this relation back. I'm just curious what your position is on whether it received fair notice that those added, that added North Fork area and the activities surrounding that would be part of this litigation, especially when it was excluded previously. The Union Pacific has fair notice. The Union Pacific has been negotiating with the United States over the North Fork area and throughout the Coeur d'Alene Valley for decades. The Union Pacific is well aware of all of the claims being made by ASARCO. The conduct asserted doesn't change. And Union Pacific sat through every day of the bankruptcy estimation hearing that included the Coeur d'Alene. But you had excluded it previously. It's very aware. But you had excluded it previously. Yes, Your Honor, it was excluded. What happened in the 30 days that changed your mind? I mean, you waited until the last day. That is correct. And so this is what happens when you wait until the very, very last day. The statute does impose a three-year restriction of time, and you are correct. We did wait, and once we filed on the deadline, we needed to make sure that if we had any additional information that we could make the complaint more precise, and that's what we did. But to say that Union Pacific is somehow surprised by including the North Fork really ---- You haven't answered my question. Why was it excluded previously? Because we weren't sure. We weren't sure of what? We weren't sure that the Union Pacific did not have contribution protection for that area. And if you weren't sure, was Union Pacific sure? They are the party that negotiated the consent decrees. They are the party that would have some understanding as to the matters covered under the consent decrees. And they have access to information that they make it very difficult to obtain to determine the nature and extent, the scope of those consent decrees. And so as a lawyer who has spent four years now litigating against Union Pacific throughout the United States concerning the $1.8 billion settlement that ASARCO entered into with, among others, the United States, and against the Union Pacific for purposes of seeking contribution, which Wright has been established in a variety of courts, where similar motions to dismiss have been denied, where similar arguments on res judicata, judicial estoppel, all have been rejected, Your Honors. And in those contexts, including the Semex case that we brought to the Court's attention, where we took that to judgment, the Court recognized in a 72-page opinion that ASARCO has this right under Circula Section 113F3B to pursue contribution because the statute said so and because the settlement agreements say so. Now, I'd like to focus on the major error, if I may quickly, the major error that the lower court made in deciding. Contractual release? Yes, Your Honor. Why didn't you put the explicit reservation that we're reserving our rights for contribution in the future? You knew how to do it. Because it wasn't necessary. This was not, and this is where Judge, the lower court, respectfully, got it so wrong. The lower court, the district court, assumed that the Union Pacific, through the way that they advocated this, that the Union Pacific was part of a global settlement that included the United States. And then based upon that, he further assumed, the lower court further assumed, that because we were all part of a global settlement together, that it would be unrealistic, and I think that was his word and his opinion, to conclude that somehow ASARCO and the Union Pacific, parties to this global agreement, would not enter into a settlement agreement that does precisely what Your Honor says, which is to expressly talk about ASARCO's contribution claim against Union Pacific. But there was no global agreement that included Union Pacific. Union Pacific's claim was for freight damages and its own past costs at specific sites. It was a $4 million settlement, not a $482 million settlement. And although they attempt to characterize this as a matter that was litigated, it was not. It was settled, and the settlement agreement omitted reference. When they advocate the settlement agreement before this Court on de novo review, and when they advocated it before Judge Lodge, they omitted reference to a key defined term. And that key defined term, Your Honor, I'd like to read to you. The defined term, which is the subject of the release, is under remaining site costs. That's what's being released, not a specific reference to ASARCO's contribution claim under CERCLA Section 113. But the settlement agreement does contain some broad wording. Does it not? It does. Okay. It releases all claims arising out of or in any way connected with costs of responses incurred by Union Pacific. So my question, aren't the costs that ASARCO incurred in its settlement agreement with the United States in some way connected to the Union Pacific's costs? Well, actually, Your Honor, the released claims. Can you just answer my question? Aren't they in some way connected with UP's costs? They are in all respects connected to the remaining site costs, as stated in the defined term under the agreement. And remaining site costs are defined as claims for all past costs or response under CERCLA incurred by Union Pacific at the remaining sites. This is not a general release as to CERCLA. This is not what was agreed to. It was a bankruptcy claim filed by the railroad seeking freight damages and some past costs at some specific sites which were defined. And that definition is claims for all past costs or response under CERCLA incurred by Union Pacific at the remaining sites. As you know, we can't consider subjective state of mind. Was there any correspondence, e-mail exchange, discussions between the parties about what this release was covering and what it wasn't? And then particularly, was it getting rid of or releasing, extinguishing SARCO's future contribution claims? Because this is being considered under a motion to dismiss, we weren't allowed to put in that extrinsic evidence. And nor, by the way, was the Court, I think, entitled, if this Court deemed the contract to be vague, was entitled to go on an interpretive exercise to try to figure out what the intent of the parties were. But I will say before this Honorable Court, if we have the opportunity to do that, if we have provided the opportunity to produce the evidence of the intent of the parties, I can tell you that there will be a mountain of evidence showing what the intent of the parties were with respect to this contract, with respect to this settlement. And that was, A, to preserve SARCO's claim, and, B, to settle the Union Pacific claims for response under SARCO incurred by Union Pacific. I would remind the Court that in the bankruptcy agreements and in all of the matters before the Court that pertain to the approval of the plan of reorganization, SARCO reserved its right to pursue PRPs at the Coeur d'Alene site. It expressly preserved that right, which right has been recognized by various courts in the United States, including the CEMEX court in the United States District Court in Texas. So we want to have our day in court. This case should not have been dismissed on a motion to dismiss. This was not a part of a global settlement where the Court determined that we didn't even have a section 113F3B right. And for that reason, we strongly urge the Court to affirm on the relation back and to reject all of the new claims that have been asserted by Union Pacific, and to reverse and to allow SARCO to produce extrinsic evidence if this is an ambiguous complaint or to allow for a fair and fruitful interpretation using the defined term, response costs. Thank you. Thank you. May it please the Court. Carolyn McIntosh on behalf of Union Pacific. Good morning. This case turns on the settlement and mutual release agreement between Union Pacific and SARCO that was entered in the bankruptcy. In that agreement, SARCO explicitly released Union Pacific from SARCO's contribution claim asserted here. That included all past and future CERCLA response costs concerning the Coeur d'Alene site. Mr. Evans and SARCO in its briefing has misdefined the term remaining site costs. Remaining site costs explicitly meant and was defined as claims for contribution and indemnity for past and future costs of response under CERCLA. Wasn't it a little bit more specific and limiting? It costs incurred by Union Pacific. And if I'm right, what was the purpose and intent, the clear purpose and intent of incurred by Union Pacific? Your Honor, you are correct. And the agreement, nonetheless, is unambiguous. The Court can and did take into account the context of the entering of the agreement, which was a bankruptcy proof of claim where Union Pacific asserted a bankruptcy proof of claim, and it was a contribution claim. And as the Court is well aware from the prior questions you asked in the other case, that in a contribution context, one party brings a contribution action, but the result of resolution of a contribution claim is an equitable allocation of the claim between the parties. That's precisely what happened here in the context of the settlement agreement and mutual releases. The mutual releases, as the Court has pointed out, was very broad form. It encompassed any and all damages, losses, expenses, costs, claims, in law, equity, known or unknown, arising out of or in any way connected with the remaining sites, Coeur d'Alene being one of the remaining sites. Clearly within the scope, these contribution claims asserted now are connected with the UP costs because of that need to and what the contribution action calls for, that equitable allocation between the parties. There are four reasons that or four arguments that ASARCO makes to manufacture ambiguity or create factual issues here that the Court should reject, and I'd like to briefly address each of those. Before we get to that, though, I'm not sure you really answered Judge Carney's question about what was the purpose of including that phrase, incurred by Union Pacific. What does that mean? Union Pacific brought its contribution claim based on the cost that it had incurred under three consent decrees, at that time two consent decrees, but it was negotiating a third with the government in the Coeur d'Alene basin, pursuant to which Union Pacific settled its liability for significantly approaching $100 million. And those costs, as part of the contribution action, Union Pacific claimed that it had rights and it submitted its proof of claim asserting those rights under 113 for contribution from ASARCO. And it was those contribution claims that were resolved by virtue of the settlement agreement and release, pursuant to which ASARCO completely released its claims, known or unknown, in any way in connection with the Coeur d'Alene site. Well, I guess another way to put it, why didn't you just say incurred by UP or ASARCO? That would have made it clear. It was in the context of the bankruptcy proof of claim. And the proof of claim was, of course, asserted by Union Pacific. So in order for ASARCO to emerge from bankruptcy, it had to resolve each of the proof of claims, not just those with the United States, but those with private parties. And so it was resolving that proof of claim. ASARCO makes four other arguments. First, choice of law, that issue was not raised below, and so this court should not consider it. In any event, ASARCO asserts that the release doesn't meet the Texas standard because the claim was not mentioned. But the Texas standard was distinguished by a later case actually cited by ASARCO in the briefs, Keck, Mahan, and Kate, where that court said the Brady case requiring a mention of the claim does not control because the release purports to cover, quote, all demands, claims, causes of action of any kind whatsoever. Nothing in Brady forbids a broad form release. Brady does not require that the parties anticipate or identify each potential cause of action and that the release may encompass unknown claims. So that is consistent with the broad form scope of our release, addressing known or unknown claims arising or in any way connected with. So the choice of law issue, we would meet the more difficult Texas standard. The scope of the release is unambiguous, as Judge Lodge found. He ruled that the plain reading of the mutual release language leads to only one conclusion, that paragraphs four and five, the mutual release provisions, are exactly what they say they are. They're mutual releases, that the claims subject to the parties agreed upon mutual releases include any  And he determined that it was unambiguous. ASARCO also asserts that it could not waive the claim because the claim did not yet exist. But as Judge Lodge found, based on the allegations ASARCO made in the complaint, there had been litigation associated with the Coeur d'Alene site since the 1990s, and therefore under the contribution provision of 113F, 42 U.S.C. 9613F, the contribution claim actually was created during or following any civil action, and that occurred in the 1990s. So Judge Lodge found that based on the allegations in the complaint, the contribution action did exist. And what ASARCO does here is conflate the creation of the contribution claim under 113F1 with the limitation provisions and the triggers under 113G. That is not an appropriate analysis. So, but in any event, the court doesn't need to decide whether that claim existed at the time the settlement agreement was entered into because the release is broad enough to address known and unknown claims, anything that was arising out of or connected with Union Pacific's response costs at the Coeur d'Alene site. Finally, ASARCO raises that it preserved these claims, and in its papers it cites several different agreements where it preserved the claims. It simply did not do that because, specifically, working through each of those claims, the Coeur d'Alene claim or the Coeur d'Alene settlement with the United States, the reservation there is only a reservation of claims that the parties may have against third parties. In the confirmed plan, the reservation is only a reservation of claims which PRP claims have not been discharged or settled. Similarly, under the schedule of preserved claims, the exact same reservation language was used, only preserving those claims that have not been discharged or settled. And obviously here, the claims were settled already. When we talk about the relation back, I'd like to get your views before you run out of time. Okay. Your Honor, if I may just add one final document. The disclosure statement, which was in ASARCO's supplemental excerpts of record, I think that's key to the preservation issue. On page nine of the supplemental excerpts, the reservation said, notwithstanding anything to the contrary herein, any PRP claim that has been subject to a release by ASARCO may not be pursued by reorganized ASARCO unless the settlement containing that release is reversed on appeal by final order. So there was no appeal of this settlement, and the settlement and release was not appealed. That disclosure states that ASARCO was not authorized to pursue this claim because it was already resolved and released. Turning to Your Honor's question about the relation back, we don't believe that relation back was appropriate, and that by virtue of the first amended complaint being filed in July, that it was time barred. But it dealt with the same Superfund site, dealt with the same decree, and dealt with the same parties, and we're supposed to apply this doctrine liberally. Well, isn't all my assumptions correct? They are not, Your Honor. They're not? Okay. No. Because in parties? First of all, as you pointed out, the original complaint expressly in paragraph 21 excluded the North Fork. So Union Pacific was not on notice. And these claims ostensibly derive from the payments that ASARCO made in the bankruptcy. And in the bankruptcy context, the Coeur d'Alene settlement was under a separate agreement than the one site associated with the North Fork. Coeur d'Alene was settled in the residual sites settlement. The Jack White mine was settled in the miscellaneous sites settlements. They were approved by the bankruptcy court on the same day, but they were entirely separate contracts. Moreover, ASARCO acknowledges that there were multiple different mines in the North Fork area, and therefore the facts would be different. The parties may be different. Whether or not there were other PRPs involved would be different in the North Fork. And under the relation back doctrine, if there are different facts that would have to be brought to bear, then the claim should not relate back. And that's precisely the case here. But it seems like the facts are very similar to the original facts set forth in ASARCO's complaint. Are they not? The facts that it's a contribution claim, that it occurred in the Silver Valley, yes. In broad form, yes. But that this separate site was carved out in the bankruptcy differently makes it, I think, necessarily a different contract and not subject to relation back. To respond to one of the court's earlier questions of ASARCO, the reason that what is apparent that happened between the filing of the original complaint and the filing of the first amended is that Union Pacific filed a motion to dismiss documenting publicly available consent decrees showing that Union Pacific had contribution protection for essentially the entirety of the main stem, the South Fork, and natural resource damages for the entire Coeur d'Alene Basin. So as soon as those documents were filed and the consent decrees were publicly available, they were not hidden, they were not difficult to find, as soon as those were discussed by Union Pacific, ASARCO withdrew its original complaint and filed its first amended, adding only the North Fork. And the North Fork issues are different. So I think that the North Fork revision and the first amended complaint does not relate back. I'd like to just sum up. Mr. Judge had a very good handle of the area. Would you concede that? Yes, he did, Your Honor. He certainly understood the geography of the site, and he heard 78 days of trial regarding the case. But I think that the exclusion of the North Fork in the original complaint, as compared with the fact that it was separately settled in the bankruptcy with different dollars being dedicated to it and the facts would necessarily be different, suggests that relation back does not obtain here. In all the briefing on the issues associated with this case, ASARCO does not once identify what was released by the mutual releases. And that, I think, is fundamental to the reason that Judge Lodge properly found that dismissal was appropriate because the claim is simply not plausible. Thank you. Thank you. Thank you. I'll give you one minute. I don't know if you'll take my word for this, but I'll probably use less. I just want to point out to the Court that there has been a statement made to this Court that is completely false and that should not be relied upon the Court in deciding whether or not to reverse. There was no equitable allocation of Union Pacific's claim against ASARCO in the bankruptcy. There was no equitable allocation of the United States' claim against ASARCO in the bankruptcy. To state to this Court that that took place is just wrong. The only review that took place was under 9019 of the bankruptcy rules and under the TMT trailer standard. To say that a contract that has a defined term that expressly limits the scope of a release, a defined term that is not relied upon through advocacy and that this Court is urged to ignore, would lead to reversible error and that's exactly what happened here. Thank you, Your Honors. Thank you. Good morning. Thank you both for your arguments today. The matter of ASARCO v. Union Pacific Railroad Company is now submitted.
judges: Carney, TASHIMA, MURGUIA